May it please the Court, Rafael Moreno, a third-year law student under the supervision of Dr. Di Papa Navarro, the petitioner. I plan to focus my argument today on the I-213 issue and rest on the papers regarding the temporary 400 issue. Agency decisions must be both reasonably explained and substantively reasonable. Because the decision below was neither, this Court should reverse. This case involves the application of the clear and convincing standard of proof, a high evidentiary bar that requires the party with the burden to produce evidence that leaves nothing to speculation or conjecture. The I.J. below discussed only the I-213's admissibility, a lenient standard that the parties could easily meet. But the I.J. never once mentioned the clear and convincing standard. The BIA did not fix the I.J.'s mistake, offering no explanation as to how the I-213 was adequate. This failure by the Agency to evaluate the evidence according to the dominating legal standard is reversible error. Reversal is also warranted if the Court reaches the alternative plan regarding the substantively reasonableness of the Agency's decision. The I.J. necessarily engaged in speculation about the I-213's sources and evidentiary techniques because the document on its face is silent on these points. The I.J.'s speculation may be permissible under the relaxed evidentiary standard governing admissibility, but has no place in the clear and convincing analysis. Why don't you explain that a little bit more, the difference, in your view, between what we've already said about admissibility of the I-213 and what you're arguing now about the burden of proof. Why don't you explain to us what, in your view, is the meaningful difference? Yes, Your Honor. First, I'll point to the standard for admissibility in the Grisham Court is a much lower standard. This Court outlined that it is just whether the document is probative or substantively fair. However, that never changed the burden of the government to produce evidence that is clear and convincing evidence of alienage. Yeah, but if we say that the I-213 is presumptively reliable and therefore admissible and we have all of this discussion about why it's like a government record and that's why it's admissible, if it's the only evidence about alienage in the record, why isn't that clear and convincing evidence? Well, Your Honor, about the presumption of reliability, as this Court explained in Felsrath, that the presumption of reliability dealt with the admissibility. It allows the government to submit the document without the ability to process it. Yeah, but it's very weird to say it's presumptively reliable and therefore admissible, but then if it's the only unrebutted evidence of his alienage to then say, well, that doesn't establish his alienage. That suggests that it's not reliable. You're saying that the IJ should not have – and the BIA should not have considered it to be reliable. I would point to, Your Honor, that the BIA and the government have appointed to an agency case where an I-213 that's conclusory and unsourced receives this presumption of reliability. I mean, why is it – two things. First of all, before we get to whether it's conclusory, is there anything in the I-213 that you think is false? Did Mr. Virapunin argue that there was any statements in it that were false? Well, Your Honor, I would argue that the burden is on the government at this point in the proceedings. If you look at the matter involving – No, I understand. Your answer is no. Excuse me? Your answer to Judge Manasci's question is no. They were not raised. It's not argued. You basically took a pass on trying to establish that the document was unsatisfactory in some way. Well, Your Honor, I would point to this point, to the matter of women's health. The matter of women's health, even in an absentia proceeding, even the respondent is not present, that the immigration does still have to evaluate the government's evidence and ensure – Yes. Judge Manasci, I ask you a very simple question. Was there any time in which you came in to refute – you offered anything to refute the accuracy of the 213? And the answer to that is no. Now, you're saying it didn't have to because the foundation was incorrect or for some reason the 213 should not have been considered as proof or something of that sort. All I'm saying is you were asked a direct question, and the answer is no, but, rather than just the but part without the but. Yes, Your Honor. You follow me? I think it's important to remember that the government has the burden to produce evidence of things that it can't. Right, so you're saying that you did not, in fact, say that anything in the I-213 was false, but you're just saying the I-213 by itself is not sufficient evidence to meet the clear and convincing standard. You keep – you're pointing to the Gomez-Gomez, right, but Gomez-Gomez, even the dissenters, right, at the BIA said they thought there was reason to doubt the reliability of that particular I-213, but they say in the absence of reason to doubt the reliability of the information contained in the Form I-213, that document is presumed to be accurate and can constitute clear, unequivocal, and convincing evidence of deportability, right? And we've quoted that favorably in at least one opinion that I found. So if we're adhering to the Gomez-Gomez standard, doesn't it mean that unless you say that there's some reason to question the reliability of the information in the particular I-213, it is clear and convincing evidence? No, Your Honor, because the matter of Gomez-Gomez is, in essence, deceiving, meaning the government has thought so far in the removal proceedings, and it held specifically that it had never held before the agency that any conclusory allegation of alienage would be sufficient to meet the government's burden. Here the government has to initially, from the outset, as the person bringing the proceedings, has to establish one simple fact, and that's alienage, and has to produce clear and convincing evidence of alienage. I'm going to interrupt you. We do that sometimes. In these proceedings, you would agree that we have a very deferential standard of review to the agency's findings, right? And we would review that where we would affirm or, I suppose, deny the petition for review if there's substantial evidence supporting the agency's conclusion, right? So that might mean that we, if we were looking at the case of Fresh, might come out either way. But that's not the question. The question is whether there's some evidence in the record that would allow the agency to come up with the answer it did, right? So even if an IJ or the BIA might look at this I-213 and not be happy with it and say that's not clear and convincing evidence, that's not the question for us, right? The question is whether any rational agency decision-maker could look at it and find it adequate. You're saying that this one could never, it would, no rational agency decision-maker could look at this and find it clear and convincing evidence even where nobody on the other side, on the side of the alien, nobody has brought forth anything to suggest any part of it is wrong. That's a tough argument to sell. I would point, Your Honor, to our first argument. Our first argument is that I-213 was never evaluated at the IJ level under the correct standard. Well, it doesn't have to, though, right? Because the BIA can make up for that, right? But the BIA stated it was relying on the IJ's reasoning and failed to evaluate the evidence itself under the plain convincing evidence standard. Here the problem is they conflated two completely different standards that are very different and never explained how a document that is conclusory and can tell you— Why do you keep saying that it's conclusory? I mean the thing has his photograph and his fingerprints, and it has a history of all the interviews with him and his criminal history, and it explains that it checked 1, 2, 3, 4, 5, 7 government databases and so on for his record. I mean why—and it's signed, you know, by an officer. So why is that conclusory? I mean it seems to me I understand what the basis is of the agency's conclusion that he's an alien. I would point, Your Honor, to the portion of the I-213 which talks about alienation. It has two conclusory sentences, and then it says that a person with a different name in a different Latin American country was apprehended by— No, it says it's the same person and that he had claimed to have a different name. But there's no basis there for what that source is, and I would point you— Yeah, but then there's a whole history about when he was interviewed and arrested and the charges brought against him and the records in the database, and it has his fingerprints and photographs. So if he wanted to say that he's not that person, it would be disprovable, right, if you could say, well, I'm not the person in the photograph. I'm not the person with the fingerprints. I never entered at that time. But he didn't enter any such evidence, right? You're just saying we shouldn't believe this government record. Again, Your Honor, the evidence has to stand alone and meet this high barrier that requires— No, I understand, but that's what I'm saying is I'm looking at this, and it does seem to me that this is at least evidence of his alienage. And if there's no evidence on either side, then it seems to me there's clear and convincing evidence of his alienage. I would point to the actual databases which you state is what was relied on. Here there's no—from the place of the document, it doesn't say it's relying explicitly on the databases, and the database is merely a list of acronyms and the word POS next to it. And I would point to a specific database. NCIC is a criminal database. POS next to NCIC could simply mean the Petitioner of the Criminal History, and that's not a dispute. There has to be more about— Right, so for the NCIC, it might be that a positive— I mean, you know, I assume that the immigration judges are more familiar with this, but for NCIC, a positive result probably means a criminal history. For the Treasury Enforcement Communication Systems, which tracks people entering and exiting, it might be about immigration status, right? So I understand that this document provides more information than simply alienage, but why don't the databases—why is that a basis for alienage as well when it's relevant? Well, the database—the information on the database doesn't explain what the database has even said and what the sources are for that database. And here, there's fingerprints on the first page, but there's no explanation of what was Ross's reference between the fingerprints that are on the— So your argument in this respect, I understand it is, if an agency in preparing a document like the 213 summarizes a number of sources without independently indicating which part of their statement comes from which source, that inherently will fail to satisfy clear and convincing evidence standard? Yes, Your Honor. Here, we're asking the government to basically just show its— So let me do this, because we have kept you up considerably past your initial time. We thank you for that. You have reserved two minutes. What we generally do in this situation is ask you, would you like to use some of those two minutes now going forward or would you like to hold that for rebuttal after we hear from the government? I'll hold that for rebuttal. Okay, good. Why don't we hear from the government then? Thank you, Your Honor. Good morning, Your Honors. May it please the Court. If the Court doesn't have any questions regarding the temporary board member regulation, I'll follow up with the closing counsel's lead and— Well, I do. Maybe we can talk about that first and you can get to everything later. So here, the Attorney General made the appointment, right? Correct. So is the Attorney General bound by the regulation that says that there are six-year terms, right? Six-month terms. Sorry, excuse me, six-month terms. Is the Attorney General bound by the regulation that says that the E.R. director can make appointments for six-month terms? No, Your Honor. The Attorney General under the statutory authority— Because the Attorney General has the statutory authority to make all delegations within the agency. He just has the authority to make appointments. That's correct. So it doesn't really matter whether the regulation authorizes six-month terms or not, or renewable terms. But you're also making an argument under Section 1, aren't you, that the Attorney General has the authority to name BIA board members generally? Yes, Your Honor. That's the Attorney General's—that's another basis. Yes, under D.U.C. 1103 G.1. G.1. Yes, correct, Your Honor. But the Attorney General has broad authority under all immigration laws to appoint temporary board members. But he can't create additional seats on the BIA, right? He can't—doesn't Congress define how many BIA members there are? No, Your Honor. That's another ACFR 1103. So that is also the authority of the Attorney General to decide how many members of the BIA there are? That's correct, Your Honor. So why would the Attorney General ever appoint a temporary board member as opposed to adding another board member? Well, it would most likely be in the case of that purpose of 1003.1. It lays out that it's in order to assist the board in a more short-term— But you just argued before that the regulation does not constrain the Attorney General, right? That's correct. So are you just now referencing that regulation to give us an illustrative example of what might be motivating the Attorney General? Correct, Your Honor. Okay. Because ultimately, as mentioned, the Attorney General has broad discretion. But here we're looking actually at the temporary board member's appointment letter. The Attorney General remarks that she's being appointed by his authority under A.U.C. 1103 G.1. But it's outlined—her appointment is outlined as the regulation, 1003.1. As simply a descriptive matter of what is the thing the Attorney General is telling this person to do, not as authority for the Attorney General's action, just as, again, a job description, if you will? Correct. Then why does he say G.1 as the source of his authority? I mean, it's G.2 that gives him the authority to make all delegations within the agency, right? Your Honor, I'm not sure specifically why the Attorney General would have a specific assignment to G.1, the authority. Although we do know that the Attorney General does have authority under G.1. Well, G.1 is just the provision that says that the Attorney General has all the authority that before the reorganization was exercised by the E.O.R. director or by the Attorney General in respect to E.O.R., right? Yes, Your Honor. So that language might suggest that maybe he is limited the way the E.O.R. director is. It does seem to me that G.2, which says that he has the authority to make all delegations, is a broader source of authority. Don't you think? Well, Your Honor, I would mostly be pointing to point G.1 that the Attorney General is an authority under all laws, as early as immigration and acclimatization. And so that would be part of the government's position as to why. Okay. And maybe it doesn't really matter because even if he cited G.1, he still has the authority under G.2, right? Correct. Could you just enlighten us? I guess it doesn't really matter so much for this case, but I imagine temporary board members are still being appointed to the BIA. Is there a regular practice right now of the Attorney General handling all these so we don't have appointments clause problems? Or does it go back and forth? Does the E.O.R. director still do some of them? What is the current practice if you're in a position to make a representation to us? I'm not in a position to make a representation, but I can say that in recent cases in other circuits where this issue hasn't been raised, specifically the Fifth and the Seventh, those involve situations where the Attorney General made the appointments for temporary board members, and those were in the last two years. So there are at least two recent instances where it seems to be where the Attorney General has made the appointments. That's fine. Are you aware of an argument in this circuit in Berry v. Garland, which was, I think, on February 22nd, which this same issue was raised? Yes. And that's already been decided, I think, by summary order. Is that correct? I'm not sure if it's been decided, but I know it was argued within the last two years. Yeah, no, they issued a summary order on February 27th, right? And so they didn't reach the question of this question, right? So there's no other case pending before our case that addresses this issue. Correct. That's my knowledge. If there are no further questions, I'd like to move on. No, wait. We'll move on to the first, to the 213 argument. Yes, right. Your Honor, the agency probably concluded that DHS met their burden of proof of petitioner's alienation by clearly convincing evidence where there was no factual basis undermining the eyewitness record. So how does that work? In a criminal case, for example, right? We're used to talking about this all the time. Their view is the standard of the unreasonable doubt. And the unreasonable doubt analysis generally applies in a case where a defendant stands on the burden of proof, remains silent, doesn't testify, doesn't call witnesses, you know, tests the government's evidence. But then we're sort of measuring whether the government has met its standard by clearing a threshold that starts at a blank slate of zero, right? And sees if it can fill it up the cup until you get to the unreasonable doubt. So every time we talk about, well, was this information contested, it seems somehow that we're eliding the burden of proof question, isn't it? I don't think so, Your Honor. So you're saying there's a burden shifting? On the presumption of reliability, yes, there is. Well, if the I-213 just said, like, let's say the, I understand this is not what it is, but let's say the I-213 didn't say anything, except for one sentence. It just said Vera Punit is an alien. And they admitted that document with, you know, the DHS seal or something affixed to it. Would that be enough to establish by clear and convincing evidence that he is an alien? I'm not sure if it would be enough. That would depend on how the immigration court would have to analyze the I-213 and determine whether there's any factual basis undermining it. Let's assume none. I'm reading, I'm understanding Judge Menasche's hypothetical to see if that's the universe, that you have an I-213 with one statement, defendant's an alien. And the alien says, I stand on the burden of proof. You haven't touched me. You haven't laid a glove on me. It's as though the record were empty. And what's your answer then? Clear and convincing evidence, yes or no? And then no other factual basis undermining any of the allegations in that I-213. And if I could… I suppose you would also say that if, in fact, it was understood that even the very brief conclusory statement was generated with all of that stuff in the background, it might even count as evidence, right? If there is all that in the I-213 in your hypothetical, then it would be – it could have the pressure. Right. So the question is not really what's on the face of the I-213. It's what people would understand to be behind it, right? But usually we allow – we say that there – I mean we have said this directly about the I-213, that the presumption of reliability that applies to all government documents applies to that, right? And if we have reason to think that that presumption should not apply, then that's when we say that it's not reliable evidence. So you could point out inconsistencies or say an alien, in your view, could point out inconsistencies. So if you had an I-213 that had the first paragraph saying alien is a citizen of Mexico and here's our – here are the various pieces of proof we have. And then a second paragraph that said definitively alien is a citizen of Singapore, and here are all the reasons for it. I suppose there could be an argument, a strong argument there that it's simply internally contradictory. So it's not like here where we have proof someone's an alien of country A, but he has falsely claimed to be an alien of country B. I'm positing a situation where it is internally and irreconcilably saying two opposing things. Would you agree that that could be a world where that particular I-213 would not rise to the level of clear and convincing evidence? Yes, Your Honor. In that situation, they could. However, this is not the case here. Although then raise the question of the two things are internally contradictory about what country he's from, but they both are consistent in that he is not a U.S. citizen. One could argue that, well, at least for purposes of determining alienage, you could say, well, he's not – the question is not where is he a citizen of. The question is, is he a United States citizen? And if it's consistent as to that not being a U.S. citizen, you might have a problem in figuring out where you're going to remove him to, right? Yes, but not to establish alienage. So I see him all the time. But I have another question. So why isn't the I-213 conclusory? I know that you just said it has his fingerprints and his photograph and the databases and so on, but it's true that it doesn't explain exactly the basis for the determination that he's an alien. Maybe we can infer that there is some information in the databases or at one of the interviews there was an admission or something, but it doesn't come out and say that. So why isn't that conclusory and why shouldn't the government be required to explain that the reason why they're reporting that he's an alien is because at one of these interviews or because of the information contained in one of these databases it establishes this fact? I admit it is conclusory to an extent. This is a record-keeping document. Conclusory or – Establishing alienage where looking at the I-213, it's a box that simply where the DHS officer will report the alienage or the native country of the non-citizen. And here it says, But it's not conclusory in the extent where the government has to show their work for every piece of information to the extent that – Yeah, it seems to me the conclusory is a little different from just saying summary or not citing sources, right? Yes, but here you are with the I-213. It does cite sources and that being that there is, again, seven databases that have been checked. There have been FBI – including FBI database and interviews with the non-citizens. So it says that they've done work. It just doesn't explain exactly what was revealed in them. So what does the databases – what does it mean? So if it says there's a positive result from a check of the Treasury Enforcement Communications System, which is the first one that's there, what does it mean that there's a positive result? Does it mean there's a record about him or does it mean – does it show that he's an alien or what does it mean to say the record was positive? Your Honor, my – what that – what we take that to mean is that as the non-citizen coming positive, there's information on the non-citizen that is shown in that database. So positive and negative means we have a record on – of this person in this database. Yes, Your Honor. But it doesn't tell me what the record says. Correct. The narrative might a little bit because the narrative does talk about his criminal history and some of these databases are about criminal history. Yes, the narrative to an extent does, but also the biographical information on the records that he actually printed does as well. Okay. So the positive and negative just means there is a record in this database. That there was some kind of hit. What the hit is, who knows. Somehow all the information has been amalgamated in some way. It's kind of like the sources at the end of a book. See generally. I read these books. They form part of the corpus that I consulted, but I don't have footnotes or endnotes telling me which quotes may or may not have come from a source. Yes, Your Honor, but critically the law says that that is permissible. That this is an inherently trustworthy and reliable document. And so if the alien were to come in and say, or sorry, if the person, the alleged alien, were to come in and say, I'm not an alien. I'm a U.S. citizen or a U.S. national or something else, what would then happen? The government would then take out the records from the database and say, here's the substantiation of his alienage. Yes, in a situation where the nonsense says that they're not an alien. Something in the 213 is false. Like, I know, I'm not from Ecuador. I was born in the United States or something to that effect. What would then happen? Well, in that situation, the I-213 may be admissible, but it may not be sufficient then to establish alienation. Because there would be a factual basis in the record that undermined the trustworthiness and reliability. This was sort of like the amicus brief that we got, right? Where they detailed all these times when there was a sort of a thin 213 and someone claimed that they weren't an alien, and then the IJ put things on pause and allowed ICE to go back and dig around for more records, right? And then come back, and then later the IJ is satisfied. Yes. However, I will note in the amicus brief, it does not cite to any sources. It says there are declarations of the attorneys in the office that can be requested, but there is nothing in there. Yeah, in the amicus brief, they talk about all these times when they were what they view as relatively thin 213s, but at no point did they claim that any of those involved people who were not in fact aliens, who were somehow mistakenly removed, right? Yes, sir. Okay. I think we have your argument, unless there's anything further from up here. Why don't we hear— No, but I would like to tell you one thing. Is there any evidence here that the petitioner did—stated that he—that it was false? No, Your Honor. Okay. Mr. Moreno, we'd like to see you again. You have two minutes. If there's anything you would like to add, please. Yes. Two quick points on the I-213 issue and one point on the temporary court members. So first, Judge Montague brought up an example of the criminal on average. I wanted to put this case in that same perspective. Consider if an investigating officer submits a report saying that the defendant is guilty and that they had investigated. No court in this country would find such a report alone sufficient to meet the prosecution's burden. Ah, but let me give you a counterexample from the criminal standpoint. District courts generally adopt all the factual findings put together in a pre-sentence report that's prepared by a probation officer, almost generally—well, almost universally by consulting NCIC and then some deeper sources, right? And the probation officer writes a report and says, I've gone through various databases and here are the different crimes of which this defendant was previously convicted, but doesn't specify the particular sources, doesn't attach police reports or conviction records. And the judge always adopts them, in that case by preponderance of the evidence, which is less than clear and convincing. But unless there's some objection from the defense, just adopts it as preponderance. And it's really similar to I-213. Now, you may not be familiar with PSRs, but to the extent you feel that you're in a position to comment and why you don't think that's a proper analogy, I'd be interested in hearing. Yes, Your Honor. First off, I want to, as you said, that the document says, I consulted all these databases in town, and here the I-213 doesn't say that. And there's also indication from the base of the document that there was some sort of interview, but here there's not that clarity that this—check this specific database. And also you mentioned that— I mean, it says, database is checked, and then there's a list of the databases. So why wouldn't that normal—it says records checked, then it has a list of the databases and where there are records. Why isn't the normal way to understand that to be the officer who signed this document saying, I checked these databases? I think this kind of points to our exchange and your exchange with my colleague here. We talk a lot about I assume, I speculate, but the face of the document doesn't contain that information. It doesn't contain what that source said, what it revealed. No, I get that it doesn't say what it said, but it at least says, I checked these databases, and that informs the conclusion that I report on the form. But I would also point to our first point is that the immigration judge doesn't necessarily speculate. It specifically—he said in his decision, I'm not requiring that they specifically state a source, and also said that it didn't matter if it was Mexico or Ecuador, it may have been established. But again, as my colleague noted, that if there's an internal consistency, which I simply seem to suggest that the immigration judge didn't actually evaluate it under the claim-convincing evidence standard, that's the error in this case. There's no explanation about how between the board and the immigration judge, how there's a sufficient amount of space to meet the claim-convincing standard. Since we're keeping you up a little bit, just going to keep you up a little bit more, I know you wanted to make a point about the question of the appointment of the temporary board member. If you could make that argument in about 30 seconds, let's see what we can hear. Yes, Your Honor. Primarily is that this is a brand-new argument that I believe the government has made. In their brief, they seem to cite the regulation that the terms are—that it's bound by this regulation. And I would point to the appointment letter also states that it's describing a specific regulation. There's nothing to suggest here that the government has presented that the AG is not bound. They merely stated in their brief that there's no six-month limit. So that issue has been waived by the government. Okay, well, putting aside the waiver, I mean it does seem like a legal issue, so we'd have the discretion at least. I mean regardless of even if it were waived, we'd have the discretion to address it. So why would it be wrong? So if the regulation is the attorney general delegating his authority to appoint immigration judges and temporary immigration judges and temporary appellate immigration judges to the EOR director, why would the attorney general himself be limited by the terms of that delegation when the authority rests in him by statute? I think it would be that the attorney general bound himself when he passed the regulation. So I agree that an agency can limit its own discretion by regulation. And if in fact the regulation says the attorney general shall only appoint for six-month terms, then he'd be bound to follow that. But the regulation says the EOR director shall appoint for six-month terms, right? So then why isn't it that the regulation is an instance of the attorney general delegating his authority to appoint for extended periods to the EOR director and said you can exercise my authority, but only if you do if you're limited to six-month terms, which may or may not be renewable. I know there's a debate about that. I would say, Your Honor, nothing on the face of the regulation seems to suggest that it's binding that authority simply on the EOR to sort of limit a six-month term. The plain reading of the regulation seems to suggest that the term limit is for a specific position, which is the temporary board member. It's not that just because the EOR director is the one appointing them.